UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                :
LYNN VALENTINO,                                 :
                                                :   CASE NO. 1:11-CV-2402
            Plaintiff,                          :
                                                :
        v.                                      :   OPINION & ORDER
                                                :   [Resolving Doc. Nos. 39 & 56]
WICKLIFFE CITY SCHOOL DISTRICT                  :
BOARD OF EDUCATION et al.                       :
                                                :
            Defendants.                         :
                                                :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Lynn Valentino filed this lawsuit against her former employer—Defendant Wickliffe City School District Board of Education ("the Board")—and Board Treasurer Susan M. Haffey, alleging that Defendants violated the federal Family and Medical Leave Act ("FMLA") and Ohio law when they interfered with Valentino's entitlement to FMLA leave, retaliated against Valentino for taking FMLA leave, and retaliated against Valentino because her husband had previously sued Defendants.[1]

Defendants move for summary judgment, arguing that Valentino was not eligible for FMLA leave and that she has insufficient evidence to succeed on an Ohio-law retaliation claim. *See* [Docs. 39 & 55]. Valentino opposes Defendants' motion. *See* [Doc. 54]. In addition,

---

[1] Valentino had also asserted an invasion-of-privacy claim but has since abandoned it. *See* [Doc. 37.]

-1-

Case No. 1:11-CV-2402
Gwin, J.

Defendants move to strike two affidavits Valentino attached to her opposition to summary judgment. *See* [Docs. 56 & 59]. Valentino opposes this request, too. *See* [Doc. 57]. For the following reasons, the Court **DENIES** Defendants' motion for summary judgment and **DENIES IN PART** and **DENIES IN PART AS MOOT** Defendants' motion to strike.

I.

Plaintiff Lynn Valentino worked as a bus driver for the Board from 1995 until she was fired in February 2011. Her husband Wayne, a bus mechanic, also worked for the Board from 1977 until the Board fired him in January 2007. After he was fired, Wayne Valentino sued, among others, the Board and Defendant Haffey, alleging that they had discriminated against him on the basis of a disability. Although her husband was suing the Defendants, Plaintiff Lynn Valentino continued to work for the Board.

On November 16, 2010, Valentino requested a leave of absence from her job with the Board. Her nine-month-old grandson had been diagnosed with cancer, and she wanted to help her son and daughter-in-law care for their three other children and to help with her sick grandson's bedside care. After a review of the hours Valentino worked during the twelve months ending November 15, 2010, the Board concluded that Valentino had worked the necessary 1,250 hours to be eligible for FMLA leave and approved her request for leave through March 4, 2011.

While Valentino was on leave and after the Board had approved the FMLA leave, Defendant Haffey took the position that Valentino did not qualify for FMLA leave. In particular, when adding up the hours an employee had worked, the Board had not subtracted hours that were paid but not actually worked, *e.g.*, sick days, vacation days. Haffey told Payroll Clerk Pamela DePalma to redetermine the FMLA eligibility of employees currently on FMLA leave using only hours actually

Case No. 1:11-CV-2402
Gwin, J.

worked. According to Defendants, after the hours are recalculated, Valentino actually worked fewer than 1,250 hours in the twelve months ending November 15, 2010. According to DePalma, this was the first time she had ever been asked to deduct hours paid but not worked when determining FMLA eligibility. *See* [Doc 46]. Defendant Haffey, it seems, despised Plaintiff and her husband, at one point telling (now-former) Board Member Joseph Muscatello that the Valentinos were "rotten, horrible people" whom she was "going to get." [Doc. 54-24].

On January 28, 2011, while she was at the hospital with her grandson, Valentino spoke on the phone with Rodney Olenchick, her supervisor, who told her that she "no longer had the privileges of FMLA" and needed to return to work. [Doc. 43]. Supervisor Olenchick told her that she needed to return to work even though the Board had approved FMLA leave through March 4, 2011. And so, on January 31, 2011, Valentino came to work. While there, Valentino told Haffey that she wanted to continue her FMLA leave and that she understood her leave was to continue until it expired in March 2011. Haffey told Valentino that she was not eligible for FMLA leave, and Valentino contacted an attorney.

On February 11, 2011, Valentino's attorney sent the Board a letter explaining that Valentino would continue to be out on leave until it expired. The Board responded, also through counsel, that Valentino was not eligible for leave and needed to report to work immediately or the Board would consider her to have abandoned her job. On February 28, 2011, after another unproductive round of attorney letters, the Board sent Valentino a final letter advising her that she had abandoned her job.

This lawsuit followed.

Case No. 1:11-CV-2402
Gwin, J.

II.

The Court's first task at summary judgment is to determine whether there remains a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). If no such dispute exists, the Court "shall grant summary judgment if the movant . . . is entitled to judgment as a matter of law." *Id.* If, however, there is a genuine dispute as to any material fact, the Court must deny the motion so that the dispute can be resolved by the jury.

Not every factual dispute will preclude the entry of summary judgment. Only disputes about facts that are material, *i.e.*, "facts that might affect the outcome of the suit under the governing law," will preclude the entry of judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, the factual dispute must be genuine, that is, "the evidence [must be] such that a reasonable jury could return a verdict for the nonmoving party." *Id.* With that in mind, the Court turns to Valentino's claims.

A. Valentino's FMLA claims

Valentino asserts two claims under the FMLA: (1) interference with her FMLA leave, in violation of 29 U.S.C. § 2615(a)(1); and (2) retaliation against her for her use of FMLA leave, in violation of 29 U.S.C. § 2615(a)(2). Although she asserts both claims against both Defendants, Defendant Haffey cannot be held individually liable under the FMLA, *see Mitchell v. Chapman, 343 F.3d 811, 832 (6th Cir 2003)* ("[T]he FMLA's individual liability provision does not extend to public agencies."), and to the extent Valentino's FMLA claims are brought against Haffey in her official capacity, those claims are properly construed as against the Board, *see Kentucky v. Graham, 473 U.S. 159, 166 (1985)*. Accordingly, the Court will treat Valentino's FMLA claims against Defendant Haffey as claims against the Board.

-4-

Case No. 1:11-CV-2402
Gwin, J.

"To prevail on an [FMLA-]interference claim, a plaintiff must establish that (1) [s]he is an eligible employee; (2) the defendant is an employer; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of his intention to take leave; and (5) the employer denied the employee FMLA benefits to which [s]he was entitled." *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003) (alterations, citations, and internal quotation marks omitted). And to prevail on an FMLA-retaliation claim, a plaintiff "must demonstrate that: (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the [plaintiff's] exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action." *Killian v. Yorozu Auto. Tennessee, Inc.*, 454 F.3d 549, 556 (6th Cir. 2006).

The Board acknowledges that it is an employer and that Valentino gave the Board notice that she intended to take leave. But, the Board says, Valentino had not worked 1,250 hours in the twelve months immediately preceding her November 2010 leave request, she was not eligible for FMLA leave, and her FMLA claims therefore fail.

As an initial matter, the parties disagree on the correct twelve-month period to use when determining Valentino's FMLA eligibility. The Board says that the twelve-month period is the twelve months immediately preceding Valentino's request for leave, so, November 15, 2009, through November 14, 2010. Valentino responds that a provision in her collective-bargaining agreement says that the twelve-month period runs from July 1, 2009, through June 30, 2010. That collective bargaining provision provides:

> For purposes of determining whether an employee has worked sufficient hours during

Case No. 1:11-CV-2402
Gwin, J.

> the preceding year to qualify, and for determining whether an employee has exhausted the twelve weeks of family leave during the current year, the term "year" shall be defined as the school year, July 1 – June 30.

Valentino correctly shows that the collective-bargaining agreement sets out a term of July 1, 2009, through June 30, 2010, for the determination of whether a claimant is an eligible employee under the FMLA.

"An 'eligible employee' is an employee of a covered employer who . . . [h]as been employed for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of the leave . . . ." 29 C.F.R. § 825.110(a)(2); *see Davis v. Michigan Bell Tel. Co.,* 543 F.3d 345, 347 (6th Cir. 2008). However, the Board and Valentino's union agreed to a collective-bargaining agreement that calculates the 1,250 hour requirement using the school year rather than the twelve-months preceding the leave.

This is somewhat of an uncharted area. Neither the Defendants nor this Court's research has identified a case finding that a collective-bargaining agreement cannot say what months should be used to calculate sufficient hours for FMLA coverage. *See Ghawanmeh v. Islamic Saudi Acad.,* 672 F. Supp. 2d 3, 12 (D.D.C. 2009) (Requirement that employee have worked 1,250 hours in year prior to leave requests to be eligible for FMLA leave is not jurisdictional.)

Title 29, United States Code, Section 2652 says "[n]othing in this Act [] shall be construed to diminish the obligation of an employer to comply with any collective bargaining agreement or any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established under this [] this Act." The Board's collective-bargaining agreement obviously established "greater family or medical leave rights" for covered employees. And the parties to the collective bargaining agreement seemed to specifically address the

-6-

Case No. 1:11-CV-2402
Gwin, J.

circumstance presented here. The Court finds the agreement to use the school year for FMLA eligibility controls.

The question, then, is whether the record can support a jury finding that Valentino worked at least 1,250 hours in the twelve-month period from November 15, 2009, through November 14, 2010. The answer is yes.

Valentino shows a calculation of the hours she worked during the July 2009 to June 2010 period. *See* [Doc. 54-23]. If the July 2009 to June 2010 calendar is used, Valentino worked at least 1,379 and possibly 1,406 hours. In addition, Valentino can easily prove the remaining elements of her FMLA claims. By Defendants' own admission, Defendants instructed Valentino to return to work before the end of her twelve-week entitlement. And Defendants later deemed Valentino to have abandoned her job *because* she remained on leave. Valentino can prove both FMLA interference and retaliation.

### III. Valentino's Ohio-law retaliation claims

Valentino also asserts Ohio-law retaliation claims against both Defendants. In particular, she claims that Defendants retaliated against her because her husband had previously filed a lawsuit against Defendants.

"To establish a case of retaliation [under Ohio law], a claimant must prove that (1) she [or a closely related third party] engaged in a protected activity, (2) the defending party was aware that the claimant [or a closely related third party] had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and adverse action." *Greer-Burger v. Temesi*, 116 Ohio St. 3d 324, 327 (2007); *see Thompson v. North American Stainless, LP*, 131 S. Ct. 863 (2011) ("We think it

-7-

Case No. 1:11-CV-2402
Gwin, J.

obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiance would be fired."). "If a complainant establishes a prima facie case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions." *Temesi*, 116 Ohio St. 3d at 327 (internal quotation marks omitted). "If the employer satisfies this burden, the burden shifts back to the complainant to demonstrate that the proffered reason was not the true reason for the employment decision." *Id.* (internal quotation marks omitted).

It's a simple matter to conclude that neither Defendant Haffey nor the Board are entitled to summary judgment on this claim. Plaintiff Lynn Valentino's husband engaged in a protected activity when he filed a lawsuit alleging discrimination on the basis of disability. *See* O.R.C. § 4112.02(A). Defendants, who were defendants in that case, of course knew about it. Defendants fired Plaintiff Lynn Valentino; that's not just an—it's *the*—adverse employment action. And, both to complete her prima facie case and to demonstrate that any nondiscriminatory reason Defendants identify may be mere pretext, Valentino offers the affidavit of former Board member Joseph Muscatello who, "[a]fter Wayne [Valentino] filed [his] lawsuit, . . . heard [Defendant] Haffey state that Lynn and Wayne [Valentino] were 'rotten, horrible people,' that she was 'going to get Wayne,' and referred to Lynn and Wayne as 'a problem here.'" [Doc. 54-24]. In fact, Muscatello was so disturbed by Defendant Haffey's "intense scrutiny of, and malicious attitude towards, Wayne and his wife Lynn Valentino," that "[o]n several occasions, [he] cautioned [Defendant] Haffey that she was taking Wayne's lawsuit too personally and that her dislike of Wayne and Lynn Valentino should not come into consideration when making employment decisions." *Id.* A reasonable jury could find by a preponderance of the evidence that Valentino's termination was not because of her failure to return

Case No. 1:11-CV-2402
Gwin, J.

to work but was instead Defendant Haffey finally "get[ting]" the Valentinos.[2]

Accordingly, the Court sees no need at this time to wade through the disputed-fact intricacies of Plaintiff Lynn Valentino's numerous disciplinary actions. Those will be a matter for the jury.

IV.

For these reasons, the Court **DENIES** Defendants' motion for summary judgment. In addition, the Court **DENIES IN PART** Defendants' motion to strike. At minimum, paragraphs four and five of Muscatello's affidavit do not conflict with his earlier deposition testimony. The remainder of Defendants' motion to strike is **DENIED AS MOOT**.

IT IS SO ORDERED.

Dated: August 7, 2012  *s/         James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE

---

[2] Defendants argue that the Court should strike Muscatello's entire affidavit because it conflicts with deposition testimony he gave in another case. The Court does not agree. Defendants do not identify any place in Muscatello's earlier deposition where he testified that Defendant Haffey never said anything derogatory about the Valentinos, or any place where he said he had not observed Haffey acting maliciously toward, or intensely scrutinizing, the Valentinos. At minimum, paragraphs four and five do not conflict with any earlier deposition testimony.
Moreover, Muscatello may of course testify to things he heard Haffey say, so long as Haffey's statements are not offered for their truth. The Court doubts Plaintiff Valentino is attempting to use those statements to show that she and her husband are "rotten, horrible people"; the Court suspects Valentino is using them to show that Haffey thinks so.